# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

February 20, 2014

Paul R. Schlitz, Jr., Esq.
Mering & Schlitz, LLC
343 North Charles Street
Baltimore, Maryland 21201

Stacey W. Harris, Esq.
Special Assistant United States Attorney
Social Security Administration
Altmeyer Building
6401 Security Boulevard, Room 617
Baltimore, MD 21235

> Re:  Amy L. Laing v. Carolyn W. Colvin, Commissioner,
>      Social Security,
>      Case No. SKG-12-2891

Dear Counsel,

Plaintiff, Amy L. Laing, by her attorney, Paul R. Schlitz, Jr., filed this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  This case has been

referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.

Currently pending before the Court are cross motions for summary judgment and Plaintiff's request for remand in the alternative. No hearing is necessary. Local Rule 105.6. For the reasons that follow, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 5, 2009, (R. 54-55) alleging a period of disability beginning June 1, 2007, due to bipolar disorder, hepatitis C, depression, and a herniated disc. (R. 16-18). Plaintiff's applications were denied initially on July 17, 2009, (R. 59-66) and on reconsideration on July 14, 2010, (R. 73-76). Plaintiff had administrative hearings on April 19, 2011, (R. 38-53) and August 16, 2011, (R. 25-37). The Administrative Law Judge ("ALJ") issued a decision on September 23, 2011, finding that Plaintiff was not disabled. (R. 9-19). The Appeals Council denied Plaintiff's request for review on August 6, 2012. (R. 1-5). The ALJ's opinion is therefore the final decision of the agency. Plaintiff filed this action seeking review of that final decision pursuant to 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

The Court has reviewed the Commissioner's Statement of
Facts and, finding that it accurately represents the record,
hereby adopts it.  (Def.'s Mot. Summ. J., ECF No. 29-1, 2-14).

## III. ALJ'S FINDINGS

In evaluating Plaintiff's claim for disability insurance
benefits, the ALJ must consider all of the evidence in the
record and follow the sequential five-step evaluation process
for determining disability, set forth in 20 C.F.R § 416.920(a).[1]
If the agency can make a disability determination at any point
in the sequential analysis, it does not review the claim
further.  20 C.F.R. § 1520(a).  After proceeding through each of
the required five steps, the ALJ in this case concluded that
Plaintiff was not disabled as defined by the Act.  (R. 19).

The first step requires that the claimant prove that he or
she is not engaged in "substantial gainful activity."[2]  20 C.F.R

---

[1] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or has lasted
or can be expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 416(i)(1)(A) (2004).

[2] Substantial gainful activity is defined as "work activity that is both
substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial
if it involves doing significant physical or mental activities and even if it
is part-time or if plaintiff is doing less, being paid less, or has fewer
responsibilities than when he worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household

§ 416.920(a)(4)(I). If the ALJ finds that the claimant is engaged in substantial gainful activity, he or she will not be considered disabled. Id. The ALJ in the present case found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her period of disability, June 1, 2007. (R. 14).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921. There is also a durational requirement that the claimant's impairment last or be expected to last for at least 12 months. 20 C.F.R. § 416.909. Here, the ALJ found that through the date last insured, March 31, 2008, Plaintiff had the following severe impairments: lumbar disc disease, status post lumbar fusion, hepatitis C, bipolar disorder, and THC/hash abuse. (R. 14).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the

---

tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. § 416.972(c).

4

listed impairments. (R. 14). The ALJ considered Plaintiff's impairments against the LOI criteria found in Listing 2 (the musculoskeletal system) and Listing 12 (mental disorders). (R. 14-16). As to the musculoskeletal system, the ALJ found that Plaintiff's lumbar disc disease did not meet or medically equal the criteria of Listing 1.04 (disorders of the spine) or Listing 1.04A (evidence of nerve root compression). (R. 14). The ALJ based his finding on Plaintiff's failure to present "clinical evidence of significant nerve root compression, arachnoiditis, or stenosis resulting in pseudoclaudication as required by Listing 1.04." (R. 14-15). As to Listing 1.04A, the ALJ determined that Plaintiff failed to demonstrate the requisite "clinically supported evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising test (sitting and supine)." (R. 15).

To qualify as a listed impairment under Listing 12, mental disorders, a claimant must establish that his or her ailment satisfies the requirements of "paragraph A" (a set of medical findings) and causes functional limitations that are incompatible with the ability to perform gainful activity. 20 C.F.R. § 404, Subpart P, Appendix 1. Impairment-related

functional limitations are adjudged pursuant to the standards enumerated in "paragraph B" and "paragraph C" of the ailments described under Listing 12.  20 C.F.R. § 404, Subpart P, Appendix 1.  The claimant need only satisfy the requirements of either "paragraph B" or "paragraph C" to establish functional limitations incompatible with the ability to perform gainful activity.  20 C.F.R. § 404, Subpart P, Appendix 1.

Here, the ALJ eschewed consideration of Plaintiff's ailments as applied to the "paragraph A" criteria, because he determined that her mental impairments failed to satisfy either "paragraph B" or "paragraph C."  The "paragraph B" criteria is met if the claimant experiences at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation.  20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ found that Plaintiff had "mild restriction" in activities of daily living, "mild difficulties" in social functioning, "moderate difficulties" in concentration, persistence, and pace, and had experienced no episodes of decompensation.  (R. 15).  These findings failed to satisfy the "paragraph B" requirements.  Thus, the ALJ continued his analysis to consider whether Plaintiff's impairments met the "paragraph C" criteria.

"Paragraph C" is satisfied by evidence establishing a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms, or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that Plaintiff "presented no evidence" establishing the requisite chronic affective disorder of at least two years duration.  (R. 15).  Plaintiff similarly failed to meet the burden of the tripartite factors, as the ALJ determined that she suffered no episodes of decompensation, nor any indicia of decompensation, and also that she continued to function outside a highly supportive living arrangement.  (Id.). Accordingly, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (R. 14).

Before an ALJ advances to the fourth step, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(a)(4)(e). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. When formulating a claimant's RFC, the ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2).

In determining a claimant's RFC, an ALJ must evaluate his or her subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (superseded by statute on other grounds); 20 C.F.R. § 404.152. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). If the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a

greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *4. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. Id.

Here, Claimant described her subjective symptoms as rendering her both physically and mentally unable to work. (R. 31, 34). With regard to her physical capacity, Plaintiff stated that her back pain precluded her from sitting or standing for periods longer than two hours. (R. 30, 31, 43). Plaintiff testified that her mental symptoms included rapid thoughts (R. 33), and an inability to concentrate (R. 34). Pursuant to the two-part test, the ALJ concluded that Claimant suffered from Hepatitis C, bipolar disorder, and had undergone lumbar surgery. (R. 16-17).

Evaluating the extent to which these impairments limited Plaintiff's capacity to work, the ALJ considered her prescribed medicines, the course of her physical and mental treatments, and Claimant's own statements. (R. 16). The ALJ determined that Plaintiff's mental condition "stabilized" and that, apart from a finite six to seven month period following lumbar surgery, she retained the capacity to perform light unskilled work. (Id.).

In assessing Plaintiff's credibility, the ALJ noted that
her testimony stating she last worked in 2001 (R. 28) was
"inaccurate by six years," as compared against the Certified
Earnings Records. (R. 16, 17). As a result, the ALJ found "her
less than fully credible in describing her past work and
consequently her ability to perform work after the time she said
she became unable to work." (R. 16).

The ALJ concluded that Plaintiff had the RFC to perform a
limited range of light work as defined in 20 C.F.R.
§ 404.1567(b) and § 416.967(b), restricted to sitting for six
hours in an eight hour workday and standing or walking for two
hours in an eight hour workday. (R. 16). The ALJ continued
that Plaintiff is limited to lifting and carrying no more than
ten to twenty pounds and, due to reduced concentration, cannot
perform jobs over the SVP-2 level. (Id.). As the ALJ
explained, while Plaintiff's medical impairments could be
expected to cause some of her alleged symptoms, "her statements
concerning the intensity, persistence and limiting effects of
these symptoms are not credible to the extent they are
inconsistent with the above [RFC] assessment." (R. 17).

At the fourth step, the ALJ must consider whether the
claimant retains the RFC necessary to perform relevant past
work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ
reiterated Plaintiff's lack of credibility regarding her past

work as a cashier and daycare provider.  (R. 16, 17).  In two
instances, Plaintiff offered inconsistent dates regarding her
most recent employment, including 2001 (R. 28) and 2005 (R. 179,
214).  Further, both dates are contradicted by her Certified
Earnings Record.  (R. 17).[3]  Unable to rely on Plaintiff's
representations, the ALJ determined that she "has no past
relevant work."  (R. 18).

Where, as here, the claimant lacks relevant past work, the
ALJ must proceed to the fifth and final step.  This step
requires consideration of whether, in light of vocational
factors such as age, education, work experience, and RFC, the
claimant is capable of work in the national economy.  See 20
C.F.R. §§ 404.1520(f), 416.920(f).  At this step, the burden of
proof shifts to the agency to establish that the claimant
retains the RFC to engage in an alternative job which exists in
the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69
(4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th
Cir. 1980).  The agency must prove both the claimant's capacity

---

[3] Plaintiff testified at the August 16, 2011 administrative
hearing that she stopped working in 2001.  (R. 28).  The ALJ
noted that this testimony, as compared against the Certified
Earnings Records, was "inaccurate by six years."  (R. 17).
Conversely, Plaintiff testified at the April 19, 2011 hearing
that she stopped working, in part, because her place of
employment had been robbed "recently."  (R. 41).  Plaintiff
indicated that she last worked as a cashier until 2005 in the
two work history reports that she completed on May 12, 2009, (R.
177, 179), and May 20, 2010, (R. 214, 218).

to perform the job and that the job is available.  Grant v.
Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency
may conclude that the claimant can perform alternative skilled
or semi-skilled work, it must show that she possesses skills
that are transferable to those alternative positions or that no
such transferable skills are necessary.  McLain, 715 F.2d at
869.

Based on the testimony of the vocational expert, the ALJ
found that Plaintiff could perform jobs that exist in a
significant number in the national economy.  (R. 18).
Specifically, the ALJ found that Plaintiff could successfully
work as a "ticket seller" (1 million jobs nationally and 3,800
jobs locally), "price marker" (144,000 jobs nationally and 400
jobs locally), and "charge account clerk" (225,000 jobs
nationally and 1,800 jobs locally).  (Id.).

The ALJ, therefore, concluded that Plaintiff was not under
a disability, as defined in the Act, at any time from June 1,
2007 through the date of denial of disability services.  (Id.).

## IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the
findings of fact to the agency and to determine upon the whole
record whether the agency's decision is supported by substantial
evidence—not to try the claim *de novo*.  King v. Califano, 599

F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the
Commissioner's decision if it is supported by substantial
evidence and if the ALJ employed the proper legal standards.  42
U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig, 76 F.3d at 589;
Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).
Substantial evidence "consists of more than a scintilla of
evidence but may be somewhat less than a preponderance."  Laws
v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such
relevant evidence as a reasonable mind might accept to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(internal quotations omitted).

In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner.  Craig, 76
F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence.  Snyder v. Ribicoff, 307
F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings
are supported by substantial evidence, this Court is bound to
accept them.  Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir.
1962).

Despite deference to the Commissioner's findings of fact,
"a factual finding by the ALJ is not binding if it was reached
by means of an improper standard or misapplication of the law."

Coffman, 829 F.2d at 517. The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. DISCUSSION

Plaintiff asserts three arguments on appeal. Accordingly, the Court shall address them in turn.

## A. Evaluation of medical opinion evidence

Plaintiff's first argument on appeal critiques the ALJ's evaluation of medical opinion evidence: medical opinion of Dr. Yatin Patil and the opinions of the state agency psychologists. (Pl.'s Mot. Summ. J., ECF No. 19-1, 5-6).

The first medical evidence from Dr. Patil is a July 16, 2007 description of an appointment with regard to Plaintiff's back pain. (R. 277). Over the next thirty months, Plaintiff visited Dr. Patil's office several more times for back treatment. (R. 275, 378, 484, 494, 577). On March 10, 2010, approximately four months after Plaintiff underwent lumbar surgery, Dr. Patil prepared a physical RFC form that opined that Plaintiff's pain severity was an eight to ten out of ten without medication and four to six out of ten with medication. (R. 378). Accordingly, Dr. Patil concluded that Plaintiff could sit for about one hour at a time with a break after each hour, up to

14

four hours total per eight-hour workday.  (Id.)  From April to
June 2010, Plaintiff saw a physical therapist ten times.  (R.
517, 526-535).  Plaintiff next visited Dr. Patil on June 1,
2010, and his medical opinion with regard to this appointment
describes that Plaintiff's condition had markedly improved.  (R.
577).  Namely, her back pain severity had decreased to a three
out of ten.  (Id.)

Plaintiff contends that the ALJ's decision does not so much
as mention Dr. Patil, nor the amount of weight accorded to his
opinion.  (ECF No. 19-1, 5)  Further, Plaintiff points to
inconsistencies between the ALJ's decision and the opinions of
the state agency psychologists whom the ALJ accorded "great
weight."  (Id. at 6).

Defendant responds first that the ALJ did not err because,
while Dr. Patil was not referred to by name, his medical
opinions were cited by the ALJ in his decision.  (ECF No. 29-1,
17).  Instead of attempting to contradict Dr. Patil, the ALJ
accepted his opinion that Plaintiff could not perform even
sedentary work for a period while recovering from lumbar
surgery.  (Id.)  Additionally, Defendant points to the ALJ's
reliance on Dr. Patil's opinion in his determination that
Plaintiff regained the capacity to perform light work within
seven months of undergoing lumbar surgery.  (Id. at 18).
Moreover, Defendant contends that, irrespective of the great

weight accorded to the opinions of the state agency psychologists, the ALJ was not required to adopt every opinion set forth therein and the ALJ's finding that Plaintiff suffered no episodes of decompensation is supported by substantial evidence in the record. (Id.)

**1. The ALJ's treatment of Dr. Patil's medical opinion does not constitute reversible error.**

**a. The ALJ considered and relied upon Dr. Patil's medical opinion.**

Plaintiff correctly notes that generally an ALJ is required to explain the weight given to the opinions of medical sources in his or her decision. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984); SSR 96-6p, 1996 SSR LEXIS 3, at *5; SSR 96-2p, 1996 SSR LEXIS 9, *11-12. This functions to ensure a complete record for reviewing courts and requires that the ALJ "explicitly indicate[] the weight given to all of the relevant evidence." Gordon, 725 F.2d at 235. Where this is not done, a reviewing court "should hesitate to determine that [the ALJ's] decision is supported by substantial evidence." Riley v. Apfel, 88 F.Supp.2d. 572, 579 (W.D. Va. 2000) (citing Stewart v. Apfel, 182 F.3d 909, 1999 WL 485862, at *5 (4th Cir. July 12, 1999) (unpublished)). Thus, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," a reviewing court is normally unable "to scrutinize the record as a whole to determine whether

the conclusions reached are rational." Gordon, 725 F.2d at 236

(quoting Arnold v. Sec'y of Health, Educ., & Welfare, 567 F.2d

258, 259 (4th Cir. 1977)); see also 20 C.F.R.

§§ 404.1527(b)-(d).  Failure to assign the weight given to a

medical opinion, however, does not preclude a meaningful review

of the decision where the ALJ "has sufficiently considered all

of the evidence in a case."  Price v. Colvin, No. 5:12-CV-716-

FL, 2014 WL 29457, at *5 (E.D.N.C. Jan. 3, 2014) (quoting Hare

v. Astrue, No. 7:08-CV-36-FL, 2009 WL 873993, at *4 (E.D.N.C.

Mar. 24, 2009)); see also Stewart, 1999 WL 485862, at *4.

    Although the ALJ here did not clearly explain the specific

weight given to Dr. Patil's medical opinion, he considered and

relied upon Dr. Patil's evaluations in assessing Plaintiff's

RFC.  Specifically, the ALJ used Dr. Patil's medical opinion to

make two distinct findings charting the claimant's physical

capacity following her October 29, 2009, lumbar surgery.  (R.

17, 343).  First, the ALJ used Dr. Patil's opinion to determine

that Plaintiff was incapable of performing sedentary work in the

months following the procedure.  During the April 19, 2011,

hearing, the ALJ questioned the existence of medical

corroboration supporting Plaintiff's allegations of back pain.

(R. 46).  Counsel directed the ALJ to Exhibit 15F, (R. 46),

which contained Dr. Patil's March 10, 2010, evaluation of the

Claimant.  (R. 378-380).  Therein, Dr. Patil indicated that

Plaintiff could sit no longer than one hour at a time, for a maximum of four hours in one eight-hour workday. (R. 379). The ALJ's reliance on this evaluation is evidenced in his written decision, where he cited Exhibit 15F to support his determination that Plaintiff's surgery rendered her unable to perform sedentary work for a period of time after the surgery. (R. 17). Second, the ALJ relied on Dr. Patil's opinion regarding Plaintiff's recovery from lumbar surgery, concluding that by June 2010, Plaintiff had improved to a point where she could resume light work. (R. 18). The ALJ supported this decision by citing to Exhibit 24F, Dr. Patil's June 1, 2010, evaluation of Plaintiff, finding that Plaintiff's back pain was significantly decreased. (R. 18, 577).[4] The ALJ's reliance on Dr. Patil's medical opinions as support for these two findings demonstrates that the ALJ "sufficiently considered all of the evidence in [the] case." See Price, 2014 WL 29457, at *5 (quoting Hare, 2009 WL 873993, at *4).

Accordingly, Plaintiff's reliance on Gordon is misplaced. In Gordon, the Fourth Circuit reversed and remanded so that the ALJ could explain the weight given to various sources of inconsistent medical evidence. See 725 F.2d at 235 (finding that a reviewing court cannot determine whether an ALJ's

---

[4] Dr. Patil noted that on a one to ten pain scale, ten being the worst amount of pain, Plaintiff's back pain had decreased to three from a prior high of eight or nine. (R. 577).

decision is supported by substantial evidence where the ALJ heard conflicting medical expert testimony and had to "come down on [one] side," if the ALJ did not explicitly indicate the weight given to all relevant medical evidence).  Here, conversely, Dr. Patil's medical opinion was not controverted by other medical evidence and the ALJ's decision was consistent with Dr. Patil's medical opinion.  Accordingly, the ALJ's failure to explicitly indicate the weight accorded to Dr. Patil's opinion does not constitute reversible error.

**b. The ALJ was not required to rigidly apply the factors found in 20 C.F.R. § 404.1527(d)(2).**

Given the Court's finding that the ALJ's decision was consistent with Dr. Patil's medical opinion, the ALJ was not required to rigidly apply the factors found in 20 C.F.R. § 404.1527(d)(2) as Plaintiff contends.  (ECF No. 19-1, 5). Defendant responds correctly that, as the ALJ accepted and relied upon Dr. Patil's medical opinion, rigid application of these factors is unnecessary.  (ECF No. 29-1, 17).

The opinions of treating physicians, such as Dr. Patil, are generally given a measure of deference by courts, due to their "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone."  20 C.F.R. § 404.1527(a)(2).  If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. Id. However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Only if a treating source's opinion does not merit "controlling weight," should it be weighed according to the factors promulgated by the Commissioner in the regulations. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188, at *4. These factors include:

(1) The length of the treatment relationship and the frequency of examination;
(2) The nature and extent of the treatment relationship;
(3) The extent to which the opinion is supported by medical evidence of record;
(4) The consistency of the opinion with the record as a whole;
(5) The specialization of the treating physician; and
(6) Any factors which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

The Social Security Rulings stress that even if a treating source does not warrant controlling weight, it is still entitled to deference and must be weighed using the factors found in 20 C.F.R. § 404.1527(d)(2).[5] SSR 96-2p, 1996 WL 374188, at *4.

---

[5] Social Security Rulings are interpretations by the commissioner of the Social Security Act. These Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1) (2012). Though they do not have the force of law

However, the Fourth Circuit has declined to find error where the ALJ's "order indicates consideration of all the pertinent factors." Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001). Consonant with this statement, several district courts within the Fourth Circuit have rejected that § 404.1527(d)(2) requires an express, formulaic discussion of each factor. See, e.g. Seneca v. Colvin, No. TMD12-1183, 2013 WL 6713182, at *2 (D. Md. Dec. 18, 2013) (declining to find error where the ALJ's reasoning reflected consideration of the factors despite his failure to engage in a "formulaic recitation"); Foster v. Colvin, No. JKS-12-1957, 2013 WL 3448036, at *4 (D. Md. July 8, 2013) ("[T]here is no requirement to analyze opinions factor-by-factor so long as the ALJ applied the proper legal standard substantively."); Hooks v. Astrue, No. SKG-11-423, 2012 WL 2873944, at *8 (D. Md. July 12, 2012) (finding that implicit consideration of the factors sufficed to satisfy Fourth Circuit precedent).

The ALJ's order did not explicitly state whether Dr. Patil's opinion warranted controlling weight. Even if this opinion had not been afforded such weight, as a treating physician, Dr. Patil's opinion remained entitled to deference

_____

before the Court, they are entitled to deference unless clearly erroneous or inconsistent with the law. Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

and required that the ALJ apply the factors found in §
404.1527(d)(2). An examination of his decision indicates
implicit consideration of the factors and thus an application of
the proper legal standard substantively. With regard to the
first and second factors, the ALJ considered the length of the
treatment relationship as well as its nature and extent. The
ALJ relied on Dr. Patil's medical opinion to conclude that
Plaintiff was incapable of performing sedentary work for a
period after her lumbar surgery and also that she had recovered
from this procedure by June 2010. (R. 17, 18). In considering
Dr. Patil's opinions over this period of time, the ALJ
necessarily considered the length, nature, and extent of the
Plaintiff and Dr. Patil's treatment relationship.

Turning to the third and fourth factors, the record
supports Dr. Patil's medical opinions as his findings are
consistent with the record as a whole. The appearance of
conflict between Dr. Patil's March 10 physical RFC and Dr.
Hakkarinen's June 18 physical RFC is resolved upon consideration
of Dr. Patil's June 1 examination in the intervening time
period. Consistent with Dr. Patil's findings of improvement,
(R. 577), Dr. Hakkarinen opined that Plaintiff could now walk,
sit, or stand for about six hours per work day. (R. 519). Even
Dr. Hakkarinen, whom the ALJ similarly did not explicitly
reference, addressed potential conflicts between his RFC

examination and that of Dr. Patil.  Dr. Hakkarinen determined

that the only conflict worthy of mention was Dr. Patil's

recommendation that Plaintiff lift no more than five pounds,

which Dr. Hakkarinen deemed "extreme."  (R. 524).  The fifth

factor requires that the ALJ consider the physician's specialty.

The record demonstrates satisfaction of this element, as

Plaintiff told the ALJ that Dr. Patil was her primary care

physician at the April 19, 2011 hearing.  (R. 47).  The sixth

factor provides that the ALJ should consider all other factors

that either support or contradict the medical opinion.  Other

than Dr. Hakkarinen's concurring medical opinion, the ALJ's

decision does not indicate that any other factors tended to

support or contradict Dr. Patil's opinion.

    In sum, the ALJ substantively applied the proper factors in

assessing Dr. Patil's medical opinion such that the record

allows for effective judicial review.  Hammond v. Heckler, 765

F.2d 424, 426 (4th Cir. 1985) (stressing the importance of

referring to evidence to provide for judicial review).  While of

course, it is preferable for the ALJ to discuss specifically the

factors identified in 20 C.F.R. § 404.1527(d)(2), the failure to

do so here is not reversible error.

## 2. The ALJ was not required to adopt every aspect of the state agency psychologists' findings.

Plaintiff also asserts that the ALJ committed reversible error by stating that he gave "great weight" to the opinions of the state agency psychologists, yet, failed to adopt all of their findings. (ECF No. 19-1, 6). Specifically, Plaintiff asserts that both the ALJ and state agency psychologists found Plaintiff's mental impairment to be "severe" in the areas of concentration, persistence, and pace; however, the state agency psychologists found further that Plaintiff was also severely impaired in social functioning and had experienced one or two episodes of decompensation. (Id.) Defendant correctly counters that "Plaintiff mischaracterizes both the ALJ's decision and the state agency opinions." (ECF No. 29-1, 18).

Contrary to Plaintiff's assertion, the ALJ found that Plaintiff's limitations in the areas of concentration, persistence, or pace were no more than "moderate." (R. 15). Further, the state agency psychologists similarly found Plaintiff's impairment in these areas to be either not significant or moderate (R. 313), though Plaintiff self-assessed that she could not concentrate. (R. 608). Additionally, the ALJ found that Plaintiff's impairment as to social functioning was no more than mild (R. 15), consistent with Plaintiff's

statements that she could and did go out in public alone. (R. 608).

The only actual inconsistency noted by Plaintiff is that the ALJ found no episodes of decompensation, compared to one or two episodes as found by Dr. Wessel and Dr. Woods. (R. 309, 536). Although Plaintiff asserts that the ALJ has no explanation for this deviation (ECF No. 19-1, 6), the ALJ explained in detail why he found no episodes of decompensation. (R. 15). Specifically, the ALJ reasoned that because the Plaintiff had not received inpatient or emergency care for her mental impairments and that she did not suffer from suicidal ideation, homicidal ideation, or psychosis typically associated with decompensation, no evidence existed of episodes of decompensation. (Id.).

Although the ALJ accorded "great weight" to the state agency psychologists, he was not required to adopt every single opinion set forth in their reports. See Bruette v. Comm'r Soc. Sec., No. SAG-12-1972, 2013 WL 2181192, at *4 (D. Md. May 17, 2013) (stating that, where an ALJ has considered the entire record, he is not required to adopt every finding of a doctor to whose opinion he assigned "significant weight"). Further, even if the ALJ adopted the state agency psychologists' findings as to decompensation, the presence of one or two episodes of

decompensation is insufficient to equal an impairment as enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  For an affective disorder to be "severe," it must result in a medically documented persistence of symptoms that result in two of the following: marked restriction of daily living activities; marked difficulties in maintenance of social function; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  20 C.F.R. § 404, Subpart P, Appendix 1 § 12.04.  Repeated episodes of decompensation requires "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  20 C.F.R. § 404, Subpart P. Appendix 1, § 12.00(c)(4).

Accordingly, even if the ALJ accepted Dr. Wessel's finding that Plaintiff had experience one or two episodes of decompensation, that finding is insufficient to establish "repeated episodes of decompensation.  See Id.  Further, at step three of the sequential analysis, the ALJ determined that Plaintiff had mild or moderate difficulties in the first three functional areas: activities of daily living; social functioning; and concentration persistence, or pace.  (R. 15); see also 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  This, combined with his finding of no episodes of decompensation, properly "yielded a finding that the impartment … is not severe"

26

within the meaning of 20 C.F.R. § 404, Subpart P, Appendix 1 §
12.04.

## B. Consideration of Plaintiff's Hearing Testimony

Plaintiff's second argument on appeal asserts that the ALJ
did not review the contents of the April 19, 2011,
administrative hearing.  (ECF No. 19-1, 6).  Plaintiff argues
that the ALJ "should not enjoy a presumption that [he] reviewed
the contents of [this] hearing." (Id.)  Specifically, Plaintiff
alleges that the April 19, 2011, hearing included testimony that
Plaintiff's lumbar surgery was delayed for two years because she
was unable to obtain insurance coverage.  (Id.; R. 46).
Plaintiff contends that this information, coupled with the
evidence that "Laing was disabled" prior to November 29, 2009,
favors a closed period of disability.  (ECF No. 19-1, 6-7).
Defendant counters that the ALJ's decision contains numerous
indicia that the ALJ did indeed consider the Claimant's
testimony from the April 19, 2011, hearing.  (ECF No. 29-1, 19).
Moreover, the same ALJ heard both the April 19, 2011, (R. 38)
and August 16, 2011, (R. 25) hearings.  While the ALJ might not
have perfect recall of the first hearing, he did hear the
testimony, and as the Defendant aptly notes, "it would be
illogical to infer that the ALJ did not consider evidence to

which he himself heard the Plaintiff testify." (ECF No. 29-1, 19).

Again, Defendant is correct that Plaintiff has mischaracterized the ALJ's decision. Id. Specifically, the ALJ never found that Plaintiff was disabled, rather, the ALJ found that Plaintiff was incapable of performing even sedentary work after her lumbar surgery for a period of time lasting less than twelve months. (R. 17). Further, as discussed infra, Plaintiff's contention that her back surgery was delayed due to insurance issues conflicts with evidence in the record that Plaintiff's surgeon only recommended the surgery six days prior to the procedure's completion. (ECF No. 29-1, 20; R. 459).

Plaintiff relies upon Montgomery v. Schweiker in support of her contention that the ALJ's purported failure to address Plaintiff's testimony leads to an inference that it was not considered. See 529 F.Supp. 124 (D. Md. 1981). In Montgomery, the court refused to infer that an ALJ properly considered an unrepresented claimant's hearing testimony where the ALJ's decision made no mention of this evidence. Id. at 129. That failure, however, was one of an aggregation of factors warranting remand in that case. In particular, the ALJ failed to discuss with the claimant, who was illiterate, the benefits of obtaining counsel. Id. at 128.

Unlike the facts present in <u>Montgomery</u>, the ALJ here repeatedly referenced Plaintiff's April 19, 2011 testimony in his decision. (R. 16, 41, 42). The ALJ referred to Plaintiff's testimony that she stopped working because she could no longer perform the requisite lifting, carrying, and standing (R. 16, 41) and Plaintiff's testimony describing Dr. Padder's treatment of her mental health symptoms (R. 16, 42). Further, the record in this case contains substantial evidence that Plaintiff's lumbar surgery was <u>not</u> delayed for two years due to insurance issues. Plaintiff's April 19, 2011, testimony is the <u>only</u> evidence supporting the contention that her surgery was delayed for two years due to insurance issues. Conversely, evidence in the record demonstrates that Dr. Sefter recommended the surgery on October 23, 2009 (R. 459) and performed the procedure on October 29, 2009 (R. 343), <u>only six days later</u>. The ALJ, as fact finder, is responsible for resolving conflicting evidence. <u>Blackstone v. Astrue</u>, No. SKG-12-2776, 2014 WL 253538, at *2 (D. Md. Jan. 17, 2014) (citing <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962)). Moreover, the ALJ determined that Plaintiff was "less than fully credible" as a testifying witness. (R. 17). Accordingly, his Court will not re-weigh the evidence as Plaintiff urges. If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962).

**C. Consideration of Plaintiff's Earning Record**

Plaintiff's final argument on appeal is that the ALJ cannot adjudicate Plaintiff's credibility and date last insured without any earnings record. (ECF No. 19-1, 7). The original transcript filed with this Court omitted Plaintiff's earnings record. (ECF No. 29-1, 20). The Commissioner remedied this omission by filing a supplemental transcript and providing Plaintiff an opportunity to file a supplemental brief. (Id.) The Court will address the issues raised in Plaintiff's first brief before addressing the issues in the supplemental brief.

**1. The original omission of the earnings record constitutes harmless error.**

**a. The ALJ's decision demonstrates that he considered the earnings record.**

Plaintiff first argues that the ALJ's decision relied on hearsay evidence of her date last insured because her earnings record was not included in the original transcript. (ECF No. 19-1, 7). Defendant responds that Plaintiff has failed to demonstrate prejudice regarding the date last insured. (ECF No. 29-1, 22). Specifically, Defendant asserts that the ALJ, when considering Plaintiff's applications for both SSI and DIB, necessarily evaluated the time period from the alleged onset date through the date of his decision, as opposed to terminating his review at the date last insured. (Id.)

Defendant is correct in noting that an ALJ considering applications for both SSI and DIB evaluates the time period from the alleged onset date through the date of his decision. See, e.g. Reynolds v. Astrue, No. SKG-11-599, 2012 WL 1107649, at *2-*8 (D. Md. Mar. 20, 2012) (considering the claimant's medical history from the alleged onset date through the date of decision in a judicial review of a denial of SSI and DIB). Here, the ALJ similarly considered Plaintiff's medical history from the alleged onset date, June 1, 2007, through the date of his decision, September 23, 2011. (R. 12, 19). Accordingly, the ALJ evaluated Plaintiff's eligibility for SSI and DIB through the date of the decision, and thus, Plaintiff could not have been prejudiced by the ALJ's determination that Plaintiff's date last insured was March 31, 2008. (R. 12). Further, the ALJ repeatedly cited to the earnings record in his decision, evincing that he properly considered this evidence. (R. 12, 17). By relying on the earnings record in his written decision, the ALJ demonstrated his consideration of this evidence. See Morgan v. Barnhart, 142 F. Appx. 716, 723 (4th Cir. 2005) (quoting Ngaruih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached."). As the ALJ has already considered the earnings record, a remand on this ground is inappropriate. See

King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (stating that a remand is appropriate when "new evidence" is submitted to a reviewing court that may have altered the ALJ's decision).

Secondly, Plaintiff contends that the ALJ's credibility determination was predicated upon a conflict between Plaintiff's testimony and the earnings record, and therefore, lacked an evidentiary basis. (R. 16, 17; ECF No. 19-1, 7). Defendant, conversely, asserts that the ALJ indicated his evidentiary basis by explicitly referring to the earnings record in his decision. (Id.; R. 17). Further, Defendant argues that the earnings record merely provides additional evidence of the conflict between Plaintiff's testimony and her work history report, rendering the lack of earnings record harmless. (ECF 29-1, 20).

Plaintiff acknowledges the general rule that an ALJ's credibility determination is entitled to great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). This general rule flows from the fact that ALJ's have the "opportunity to observe the demeanor and to determine the credibility of the claimant." Id. Social Security Ruling 96-7p also provides further guidance applicable here. For example, SSR 96-7p states "[o]ne strong indication of the credibility of an individual's statements [are] their consistency, both internally and with other information in the record." SSR 96-7p, 2012 WL 374186, at *4. ALJs do, however, "have a duty to explain the basis of

their credibility determinations …" <u>Long v. U.S. Dep't of</u>
<u>Health & Human Servs.</u>, No. 99-3651, 1990 WL 64793, at *2 n.5
(4th Cir. May 1, 1990). Social Security Ruling 96-7p similarly
instructs that "[w]hen evaluating the credibility of an
individual's statements, the adjudicator must consider the
entire case record and give specific reasons for the weight
given to the individual's statements." SSR 96-7p, 1996 WL
374186, at *4. This determination "cannot be based on an
intangible or intuitive notion about an individual's
credibility." <u>Id.</u> Instead, the ALJ's reasoning "must be
grounded in the evidence and articulated in the determination or
decision." <u>Id.; see also Taylor v. Colvin</u>, No. 3:12-CV-08626,
2013 WL 6243716, at *12 (D. Md. Dec. 3, 2013).

Here, Plaintiff's statements regarding her work history
were markedly inconsistent. She testified that she had last
worked in 2001, but her earnings record showed that she last
worked in 2007. (R. 16-17). Moreover, Plaintiff wrote in her
work history report that she had worked up until 2005. (R.
177). Accordingly, Plaintiff's work history report, in addition
to Plaintiff's earnings record, demonstrated that Plaintiff's
testimony lacked credibility. Further, in accordance with SSR
96-7p, the ALJ articulated his reasoning for finding Plaintiff
"less than fully credible," citing to the earnings records and
noting that her testimony about her past work history was

"inaccurate by six years." (R. 16, 17). Consequently, the ALJ's credibility determination shall not be disturbed by this Court.

Finally, Plaintiff contends that the earnings record may have "undermined" the ALJ's inclusion of a SVP-2 level mental limitation in the hypothetical question posed to the vocational expert ("VE"). (ECF No. 19-1, 7; R. 35).[6] Plaintiff's argument continues that if the earnings record demonstrated only substantial gainful activity at that level, she could not have obtained skills from doing unskilled work. Defendant disputes that contention, arguing that the earnings record had no bearing on the ALJ's hypothetical to the VE. (ECF No. 29-1, 21). First, Defendant argues that transferability of job skills was not an issue because Plaintiff did not have any past relevant work. (R. 18). Second, in determining RFC, the ALJ relied on the opinions of state agency psychologists, never mentioning her skill level of past employment. The Court agrees with Defendant. Plaintiff's argument is speculative and not grounded in the record.

When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record so that the

---

[6] An SVP-2 job corresponds to unskilled work. SSR 00-4p, 2000 WL 1898704, at *3.

VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  "[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 F. Appx. 359, 364 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)).

A review of the ALJ's written decision demonstrates that sufficient evidence supports his conclusion that "[P]laintiff could mentally work at the SVP-2 level." (R. 16).  The ALJ engaged in a detailed explanation describing why he rejected the opinion of Dr. Archibong in favor of Dr. Langlieb, as the latter doctor actually interviewed Plaintiff. (Id.).  The ALJ accepted Dr. Langlieb's opinion that Plaintiff's mental condition was stabilized and concluded therefrom that she could work at the SVP-2 level. (Id.).  Accordingly, the ALJ's hypothetical question to the VE included "[t]his person . . . is limited to jobs of SVP: 2 or less." (R. 35).  As this question reflects an RFC assessment for which the ALJ had sufficient evidence, it is "unimpeachable" as within the Fourth Circuit's standard.  Fisher v. Barnhart, 181 F. Appx. 359, 364 (4th Cir. 2006).

**b. The ALJ properly developed the administrative record.**

In her supplemental brief, Plaintiff argues that the omission of the earnings record indicates that the ALJ did not satisfy his duty to rely on evidence from the hearings, look fully into the issues, and ensure that the record is fully and fairly developed. (Pl.'s Supplemental Mot., ECF No. 25-1, 3). In response, Defendant avers that Plaintiff has failed to evince prejudice where she has not made a showing that the earnings record was either unavailable or erroneous. (ECF No. 29-1, 21).

The ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). However, "[she] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Bell v. Chater, No. 95-cv-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (unpublished) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)).

Plaintiff's counsel did not raise any objection to a lack of earnings record at either of the hearings. Even when afforded the opportunity to file a supplemental brief, Plaintiff does not argue that the ALJ erred in finding no relevant past work history, nor that the earnings record submitted to this Court is inaccurate. The ALJ explicitly referenced the earnings record in his decision. The since-remedied omission of the earnings record after the ALJ issued his findings does not

negate his consideration of "all relevant facts." See Cook, 783
F.2d at 1173.  Accordingly, this Court finds that there is
substantial evidence that the ALJ developed a reasonably
complete record.

Plaintiff also contends that Defendant must show good cause
for failure to submit the earnings record when the claim was
before the ALJ.  (ECF No. 25-1, 4).  Defendant responds
correctly that the good cause standard is only applicable to
claimants.  (ECF No. 29-1, 22).  See Borders v. Heckler, 777
F.2d 954, 955 (4th Cir. 1985) (stating that "[t]here must be
good cause for the claimant's failure" to submit newly
discovered evidence to the ALJ); see also Hagerman v. Barnhart,
96 F. Appx. 118, 119 (4th Cir. 2004) (refusing to consider new
evidence as claimant failed to satisfy the Borders standard).
Again, Plaintiff does not contend any inaccuracy in the records.
Any potential prejudice is negated given the ALJ's reference to
the earnings record in his decision.  If this Court were to
remand on this issue, the outcome of the case would not change
because the ALJ already had access to the earnings information.

## 2. A sentence six remand is inappropriate.

Plaintiff characterizes the supplemental transcript as new
evidence, and she argues that she too should be accorded the
right to submit new evidence of medical procedures occurring
after the ALJ's decision.  (ECF No. 25-1, 4).  Defendant argues

that Plaintiff has not met her burden to introduce new evidence. (ECF No. 29-1, 22).

The sixth sentence of 42 U.S.C. § 405(g) provides for remand when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-100 (1991); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). The Court should remand a case pursuant to sentence six only if the claimant demonstrates that the evidence is new, material, and that there was good cause for not submitting this evidence to the ALJ. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98-100; Wilkins, 953 F.2d at 96 n.3. Such remands are disfavored, as Congress did not want the disability adjudication process to "go on and on and on." Melkonyan, 501 U.S. at 100-01; see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) (stating that Congress intended such discretionary remands to be "few and far between").

Plaintiff submitted evidence of two surgical procedures, one in December 2012 and another in April 2013. (ECF No. 25-2, 4). The December procedure was for spinal stenosis at L3-4 and the April surgery was a revision of the fusion at L3-4. (ECF No. 25-3, 1). Plaintiff's prior surgery was at L4-5. (R. 457).

Therefore, the back issues addressed in the new medical records either evidence a new condition or an exacerbation of the earlier subtle disc protrusion at L3-4. (R. 460-61).

The materiality requirement demands a reasonable probability that the new evidence would have altered the ALJ's decision. <u>Melkonyan</u>, 501 U.S. at 98. Both surgeries occurred well after the date of the ALJ's decision and followed a period where Plaintiff's back pain improved. Multiple surgeries alone are not enough to prove a prolonged disability when there is evidence that symptoms have improved even if the underlying condition remains. <u>Foster</u>, 2013 WL 3448036, at *2. Therefore, this new evidence does not give rise to a reasonable probability that it would have changed the ALJ's decision. Consequently, Plaintiff fails to meet the requirements of a sentence six remand.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ committed no material errors in his decision. Accordingly, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge